IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **BENJAMIN KITCHENS,** | : |
| **Plaintiff** | : |
| v. | :     5:05-CV-275 (WDO) |
| **BUSTER KING, et al.,** | : |
| **Defendants** | : |

**ORDER**

On September 2, 2004, the Georgia Department of Corrections conducted an unannounced, controlled "shakedown" at Hancock State Prison in Sparta, Georgia to search employees and inmates for illegal drugs and contraband and to review operational indicators at this particular institution. During the "shakedown," Jimmy Howard, a canine handler with the Georgia Department of Corrections ("DOC") Canine Unit, walked his narcotics dog around Correctional Officer Benjamin Kitchen's vehicle in the parking area and the dog alerted to the presence of illegal drugs in the vehicle. Officer Howard then notified Officer Buster King, a certified canine handler with the DOC and the monitor in charge of the search of the parking area, that his dog had alerted on Kitchen's vehicle.

After King informed Kitchens that a narcotics dog had alerted to the presence of illegal drugs in his vehicle, King asked Kitchens whether he would consent to a search of his vehicle and Kitchens did. After Kitchens consented to the search, King, who has at least twenty (20) years of experience in the area of seizing and field testing illegal drugs, searched

1

the interior of the vehicle and found a green leafy substance that appeared to be marijuana in a tray inside the armrest. Officer King also found two packs of rolling papers located in the same tray.

Following his discovery of the green leafy substance, Officer King showed it to Correctional Officer Henry Hunt who was assisting with the search of the vehicle. Officer King then went to his truck and conducted a field test of the substance with a field test kit. Officer King had extensive experience in field testing illegal drugs and conducted said test pursuant to the instructions provided in the "NIK Field Test Kit." After placing the green leafy substance in the three capsules included in the field test kit, the liquid in the capsules turned a lavender/bluish color which indicated the substance was marijuana/tetrahydrocannabinol ("THC"). Buster King then showed these results to Officer Hunt and Officer Tremble.

Following this field test, Officer King contacted his supervisor, Defendant Rick Jacobs, Director of Special Operations for the DOC, and notified Jacobs that he needed to meet with him. Jacobs and Defendant Victor Walker, Warden of Hancock State Prison, came out of the institution and met with Officer King who informed Jacobs and Walker that a narcotics dog had alerted on a vehicle, that consent had been given to search the vehicle, that a substance was found in the vehicle that tested positive for marijuana/THC and that rolling papers had been found in the same area where the substance was found. During the meeting with Walker and Jacobs, Officer King showed Walker and Jacobs the lavender/bluish colored capsules in the field test kit indicating that said substance tested positive for marijuana/THC

and also showed them the rolling papers he had found in the same area as the contraband.

Following Buster King's positive field test, Sergeant Karl Fort was called to the parking lot and was told to bring an evidence bag and a digital camera. After Sergeant Fort came out to the parking area, Buster King told Sergeant Fort that a narcotics dog had alerted on Kitchen's vehicle and that he had searched the vehicle and found a substance that tested positive for marijuana/THC. Upon his arrival in the parking lot, Sergeant Fort saw the container removed from Kitchen's vehicle which contained the rolling papers, the positive field test with the lavender/bluish colored capsules and "flakes of a green substance." Sergeant Fort took photographs of the evidence.

After Warden Walker was informed that the marijuana/THC was found in Kitchen's vehicle, Walker made the decision to arrest Kitchens for being in possession of marijuana/THC and directed the control-room operator to contact the Hancock County Sheriff's Office and ask them to send a unit to the institution. As the Warden, it is part of Walker's job to maintain the security of the institution by making sure illegal drugs and other contraband are not present within any part of the institution including, but not limited to, the parking areas. In furtherance of these job duties and in his role as a P.O.S.T. (Peace Officer Standards and Training) certified officer, Warden Walker is authorized to enforce any violations of the laws of the United States or the State of Georgia by securing the individual offender and contacting the appropriate law enforcement authorities to have said offender arrested.

In order to avoid bringing discredit on the DOC by having a correctional officer

having their booking photograph ("mug shot") taken in a correctional uniform and to avoid a situation where an employee is incarcerated/detained in a law enforcement uniform and thereby endangering their safety, it is the standard practice of the Georgia DOC to require an employee to take off their correctional uniform and put on a jumpsuit prior to leaving the applicable DOC facility and going through the booking process and subsequent incarceration or detention.  As Kitchens' commanding officers at Hancock State Prison, Tommy Tremble, Chief of Security, and Warden Walker were authorized as part of their job duties to retrieve Kitchens' correctional officer uniform because it is the property of the DOC and to comply with the aforementioned practice of the DOC.  As the Director of Special Operations for the DOC, Jacobs also held a superior rank to Kitchens and for the same reasons listed above, was also authorized to command Kitchens to take off his correctional officer uniform and put on a jumpsuit prior to leaving Hancock State Prison.  Therefore, prior to the arrival of the Sheriff's Deputy, Kitchens was directed to remove his correctional officer uniform and put on a jumpsuit.  Although he first resisted this directive, he removed his uniform and put on a jumpsuit and tee shirt.  Following putting on the jumpsuit and giving up his badge, his correctional officer pin, his nametag and "walkie-talkie," the Sheriff's Deputy arrived at Hancock State Prison, arrested Kitchens for possession of marijuana and transported Kitchens to the Hancock County Jail.  Kitchens was never handcuffed.

Prior to Kitchens leaving Hancock State Prison in the custody of the Hancock County Sheriff's Office, Buster King gave Deputy Sheriff Clayton the sealed evidence bag containing the console container with the green leafy substance, the field test kit and the

4

rolling papers. Buster King completed the official chain of custody form attached to the evidence bag which shows he transferred the evidence to Deputy Sheriff Clayton.

After Kitchens arrived at the jail, he contacted Warden Walker and informed Walker that the Hancock County Sheriff's Office was planning on transferring Kitchens to another detention facility in another county due to renovations at the Hancock County facility. Walker thereafter went to the jail and secured Kitchens' release. Kitchens was allowed to leave and go home.

Sergeant Fort completed an official incident form and completed a one-page handwritten statement which he attached to this report in lieu of completing the "summary of incident" portion included in the official incident report form. Fort also attached the photographs of the evidence to the incident report. As the C.E.R.T. (Correctional Emergency Response Team) Sergeant, Sergeant Fort was the designated official within Hancock State Prison who obtained warrants on inmates and employees of Hancock State Prison. The next day, Sergeant Fort went to the chambers of Magistrate Judge Shirley Ingram to obtain a warrant for Kitchens' arrest. Before Sergeant Fort gave Magistrate Judge Ingram the information necessary for her to make a decision whether to execute the warrant, Magistrate Judge Ingram had Sergeant Fort raise his right hand and swore him under oath. After being placed under oath, Sergeant Fort orally informed Magistrate Judge Ingram that Kitchen's car was searched while it was parked on the property of Hancock State Prison and that a substance was found that tested positive for marijuana. Sergeant Fort gave Magistrate Judge Ingram a copy of the incident report that he prepared. Fort made an affidavit showing that

5

he stated under oath that Plaintiff "did violate O.C.G.A. 16-13-2(b) when he/she willingly and knowingly unlawfully possess in his vehicle on the property of Hancock State Prison less than one (1) ounce of marijuana in violation of the Georgia Controlled Substance Act." Magistrate Judge Ingram executed a warrant which provided that "for sufficient causes made known to me in the above affidavit and from other oral testimony given under oath, you are hereby commanded to arrest Benjamin Kitchens, the Defendant named in this foregoing affidavit charged by the prosecutor therein with the offense against the laws of the State . . . ."  Kitchens was notified of this warrant by the Hancock County Sheriff's Office on September 3, 2004, turned himself in that same day and was immediately released on his own recognizance without the requirement of posting a monetary bond.

Following his arrest, Kitchens was immediately suspended with pay pursuant to DOC regulations and was notified on September 9, 2004 that he would be suspended without pay due to pending criminal charges effective September 25, 2004. Kitchens exercised his right to respond to the proposed adverse action but his suspension was upheld on September 22, 2004. In the correspondence notifying Kitchens that his suspension was being upheld, Kitchens was notified that he had the right to appeal this final determination to the State Personnel Board pursuant to State Personnel Board Rule 14 and Kitchens filed a "Classified Employee's Appeal" of his suspension with the State Personnel Board on or about October 13, 2004. On January 10, 2005, the Clerk of the Superior Court of Hancock County filed an Order with respect to the criminal charges made against Kitchens stating that "for good cause shown, it is the order of the court that a Nolle Prosequi be, and the same is, hereby entered

6

in this case." Kitchens never appeared in any court on the charges. On or about January 14, 2005, Kitchens received correspondence from Walker informing him that "we have been advised that the charges against you have been dropped and your pay will be reinstated effective 1/16/05. Your Appointing Authority will now be Warden Chasse at Washington State Prison." Following his reinstatement, Kitchens was given all of his back pay covering the entire period of time that he was in a "suspension without pay" status and was given a two-percent raise. Because the issue of Kitchens' suspension without pay was resolved, an administrative hearing was never held with respect to his appeal. Kitchens never requested a name clearing hearing during the applicable period of time. Kitchens testified that he received unemployment benefits when he was in the "suspension without pay" status and that he did not seek any employment during that period of time.

Benjamin Kitchens filed this case against the aforementioned officers alleging a 42 U.S.C. § 1983 claim for violation of his Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure and a Fourteenth Amendment claim based on his right to not be deprived of liberty without due process. Plaintiff Kitchens alleges he was arrested without probable cause, that Defendant Fort did not testify under oath or give sworn testimony to the Magistrate Judge, that Defendant Fort had no expertise in the identification of marijuana and that he gave a conclusory affidavit that established no information concerning his ability to distinguish marijuana residue from tobacco residue. Plaintiff also alleges that placing him in a prison jumpsuit and stating that he possessed marijuana was a false statement of a "stigmatizing nature" and that he has never had a reasonable opportunity

for a name clearing hearing. During his deposition, Plaintiff explained his claims as (1) a violation of his right to be free from an unreasonable search and seizure and (2) that he has never been given a name clearing hearing.[1] Defendants moved for summary judgment on all claims and Plaintiff moved for partial summary judgment as to Defendant Tremble's and Defendant Walker's liability.

### *Summary Judgment Standard of Review*

Summary Judgment is appropriate when the pleadings, depositions and affidavits submitted by the parties show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Supreme Court explained the moving party's burden may be discharged "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In Celotex, the Court held that summary judgment is appropriate against

> A party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Id. at 322-23. "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.

---

[1] R. at 21, p. 119 (Dep. of Plf.).

The relevant rules of substantive law dictate the materiality of a disputed fact." Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." Id. (citation omitted).

*Unreasonable Search and Seizure*

Although it is not entirely clear what all Plaintiff contends was a violation of the "unreasonable search and seizure" principle, the claim seems to relate to the drug dog's search, the search of the vehicle and his resulting arrest. After the narcotics dog alerted on Plaintiff's car, he immediately gave consent to search the vehicle. Further, based on the discovery of what turned out to be marijuana in Plaintiff's vehicle, his arrest was not unlawful. "Probable cause to arrest exists where 'the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990) (citations omitted). "The existence of probable cause . . . is an absolute bar to a section 1983 action for false arrest." Id. at 1505-06 (citation omitted). The facts and circumstances within the Defendants' knowledge about which they had reasonably trustworthy information, based on the officers' collective experience and the dog's alert on the vehicle, was sufficient to support their belief that an offense had been committed. Plaintiff's subsequent arrest was based on probable cause because the field test confirmed the substance found in his car was marijuana. To the extent the "unreasonable search and seizure" claim pertains to the search of Plaintiff

and his subsequent arrest, Defendants are entitled to summary judgment on that claim.

### *Deprivation of Liberty Without Due Process*

Plaintiff Kitchens claims he was deprived of the "liberty" of his reputation when his arrest was reported in area newspapers and when he was "deprived" of a name-clearing hearing. These issues were addressed in the factually and legally analogous case of Cotton v. Jackson, 216 F.3d 1328 (11th Cir. 2000). In Cotton, the plaintiff brought a §1983 action against a state college president and the board of regents for terminating him for sexual harassment without providing him an opportunity for a name clearing hearing. Plaintiff claimed the defendants "effectively ruined his reputation by labeling him as a sexual harasser and by terminating his employment without giving him an opportunity to be heard." Id. at 1330. The Eleventh Circuit explained, "We have said that - although damage to reputation, standing alone, does not provide a basis for an action under 42 U.S.C. § 1983 - when reputational damage is sustained in connection with a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983." Id. (citation omitted). "To recover, a plaintiff must satisfy a six-factor test and show that '(1) a false statement, (2) of a stigmatizing nature, (3) attending a governmental employee's discharge, (4) was made public, (5) by the governmental employer, (6) without a meaningful opportunity for an employee name clearing hearing.'" Id. (citation omitted). "The hearing can be held either before or after the termination or publication." Id. (citation omitted). Because under Georgia law the plaintiff was entitled to seek a writ of mandamus, the court held that adequate state remedies were available to provide the plaintiff

10

with the opportunity for a name clearing hearing and thus he failed to state a procedural due process claim.

In the case at bar, Cotton forecloses Plaintiff's due process claim because he also had the opportunity to seek a writ of mandamus and failed to do so, and failed to show that this remedy was somehow withheld from him or inadequate to address his alleged injuries. Further, the record reflects that Plaintiff was placed on the various stages of suspension pursuant to clear DOC policy and eventually reinstated with full pay.[2] Accordingly, Defendants are entitled to summary judgment on this claim.

### *Remaining Claims*

Plaintiff's remaining claims are either foreclosed by the findings above or are without merit and will be dealt with summarily:

1. The claim that there was no probable cause for Plaintiff's arrest was addressed above and is therefore dismissed.

2. Plaintiff claims that Defendant Fort did not testify under oath or give sworn testimony to the Magistrate Judge. However, this has been refuted by the record evidence and Plaintiff failed to provide any evidence to the contrary.[3] The claim is therefore

---

[2] R. at 38-3 (DOC Standard Operating Procedures). Plaintiff's claim that his reinstatement at a different location was a constitutional violation is without merit. Defendants explained, and Plaintiff failed to refute, that this was necessary considering everyone in the prison, including the prisoners, were immediately aware of Plaintiff's arrest and that Plaintiff would be unable to be "effective" in his position as a Correctional Officer after the arrest. Plaintiff failed to show how his reassignment entitles him to any relief against the Defendants.

[3] R. at 26, p. 5. (Dep. of K. Fort).

dismissed.

3. Plaintiff claims the officers did not have expertise in the identification of marijuana and thus the use of the same to arrest him was a violation of his constitutional rights. The record shows the officers did indeed have decades of experience in this area. Further, the Court has already found that probable cause existed from the totality of the circumstances. This claim is therefore dismissed.

4. Plaintiff claims the affidavit given by Fort did not give sufficient information to the Magistrate Judge regarding distinguishing marijuana residue from tobacco residue. Again, based on the totality of the circumstances, there was probable cause to search and arrest Plaintiff. There is no evidence whatsoever in the record to cause this Court to doubt the legitimacy or impartiality of the Magistrate Judge's findings. Moreover, Plaintiff failed to show how this claim has any substantive merit whatsoever, or that it is even relevant in any way, and it is therefore dismissed.

5. Plaintiff claims it was a violation of his "personal dignity" to be placed in a prison jumpsuit when he was arrested by the Sheriff's Deputy. The deposition testimony shows the Defendants were following long-standing DOC procedures when Plaintiff was placed in a jumpsuit to be taken away from the prison and incarcerated. As explained by Defendants,

> In order to avoid bringing discredit on the Department of Corrections by having a correctional officer having their booking photograph ("mug shot") taken in a correctional uniform and to avoid a situation where an employee is incarcerated/detained in a law enforcement uniform and thereby endangering their safety, it is the standard practice of the

> Georgia Department of Corrections to require an employee to take off their correctional uniform and put on a jumpsuit prior to said employee leaving the applicable Department of Corrections facility and going through the booking process and subsequent incarceration/detention.[4]

Plaintiff failed to present any evidence or viable argument that this policy should be deemed invalid, was applied unconstitutionally to him or was in any other way a violation of his federally protected rights.

6. Plaintiff claims the Defendants' statement that he possessed marijuana was a "false statement of a stigmatizing nature." This issue is addressed above in the due process analysis. Further, the field test conducted on the substance found in Plaintiff's car showed the substance *was* marijuana. This claim is therefore dismissed.

7. Plaintiff claims he never had a "reasonable opportunity" to have a name clearing hearing. As addressed above, this claim is without merit. The case law from this circuit and the state courts shows the remedy of a writ of mandamus was available and Plaintiff did not take advantage of the same.

8. To the extent Plaintiff intended to bring a new claim of "predeprivation due process" in his summary judgment briefs, that claim is dismissed pursuant to Allen v. Georgia Dpt. of Human Resources, 2006 WL 2263987, at *3 (M.D. Ga. Aug. 8, 2006) (plaintiff may not present a new claim at the summary judgment stage) (citing Gilmour v. Gates, 382 F.3d 1312, 1313 (11th Cir. 2004)).

---

[4] R. at 38-1, p. 18 (Defs.' Opp'n to Plf.'s Mot. For Partial Summ. J.); R. at 34, p. 26 (Dep. of R. Jacobs).

Because Plaintiff failed to establish the violation of any constitutional right of which the Defendants should have been aware, the Defendants are entitled to qualified immunity from Plaintiff's claims.  Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692 (1999).  Based on the foregoing, Defendants' motion for summary judgment is GRANTED and Plaintiff's motion for partial summary judgment is DENIED.

**SO ORDERED this 17th day of October, 2006.**

**S/
WILBUR D. OWENS, JR.
UNITED STATES DISTRICT JUDGE**